### FURMAN v. FURMAN.
No. 59 C 11251.

Circuit Court, Dade County.

March 28, 1960.

John H. Duhig, Miami, for plaintiff.

Benjamin I. Shulman, Miami Beach, for defendant.

ROBERT L. FLOYD, Circuit Judge.

This cause came on for final hearing before the court upon plaintiff's complaint for divorce, defendant's answer thereto and counterclaim for separate maintenance, and plaintiff's reply thereto, and the court having heard the testimony of the parties and their witnesses, argument of respective counsel, and being fully advised in the premises, finds as follows —

The facts in this case reflect bizarre conduct by both parties, to say the least. Plaintiff and defendant were married in 1934. One daughter was born of the union. She is now 24 years old and married. Plaintiff went into the service during the war, and the parties resumed cohabitation in 1946.

In 1947 the defendant wife became enamored with one Norton, and the plaintiff, upon learning of this, left the marital abode in August, 1947. The parties then lived in New York. The husband went to Chicago with a band and the wife, in order to become "eligible" to marry Norton, obtained a "mail order divorce" by paying a New York attorney $300 for a Mexican decree. It was also brought out that Norton needed the same freedom

status, and he obtained one also. This "decree" is in evidence, marked plaintiff's exhibit 1. Defendant never left the state of New York, and plaintiff was never served personally, nor did he file any pleadings in the Mexican "proceedings."

The Mexican divorce is dated January 13, 1948, and shortly thereafter Mary Furman and Norton were "married" in a civil ceremony and left for California with the daughter of the parties hereto. Married life was not as blissful as anticipated, so Norton told Mary (defendant here) to pack up and go back to New York after nine months of "married life" in California. No "divorce" proceedings have ever been instituted as to this "marriage". Mary returned to New York and lived with her sister, Mrs. Dwyer.

In 1950 the plaintiff moved in with Mary and the daughter in the sister's apartment, and they lived in this apartment until 1956. The evidence is conflicting as to whether they lived together as husband and wife, but, for the purposes of this decree, it makes little difference. In 1956, their daughter had a child out of wedlock and the disposition of this child caused violent disagreements and arguments between the parties. Finally, in 1956, plaintiff moved out of the apartment in New York, and the parties have not lived together since that time.

In the meantime, prior to his last departure, the plaintiff husband was introduced to one Loretta Fogarty by his wife. This introduction blossomed into a romance, and, on January 4, 1958, Loretta and the plaintiff were "married" in Stamford, Connecticut. It was then that defendant wife, Mary, decided to bring court proceedings in New York. The result of these proceedings is reflected in the final decree of the supreme court of New York, admitted as defendant's exhibit A. This court had personal jurisdiction over the parties, they were personally served, and each appeared through counsel. The New York decree, dated February 24, 1959, nullified and voided the Mexican mail-order divorce, declared Mary and George Furman to be husband and wife, and nullified and voided the marriage ceremony between George and Loretta.

The plaintiff husband came to Florida shortly after the New York decree was entered. Mary remained in New York, and Loretta continued to reside there. However, Loretta vacationed in Florida in May, 1959, visited George during the week she was here, and as a result thereof, they are now the parents of a child born December 30, 1959. Loretta, her mother and infant daughter reside in premises used by George in his TV business on Miami Beach. George says he resides elsewhere on the Beach.

Having established the requisite residence in Florida, George filed suit for divorce against Mary in November, 1959, alleging desertion by Mary in August, 1947 (this is the date George first moved out and went to Chicago). Mary counter-claimed for separate maintenance alleging desertion by George in 1956, and adultery with Loretta. At the trial, without objection, George amended his complaint and alleged as his ground for divorce, that Mary obtained a divorce from him in Mexico.

There is little or no dispute in the facts recited above. The undersigned is of the opinion that the plaintiff's ground relied upon in his amended complaint would be good were it not for the subsequent valid and binding New York decree declaring the Mexican divorce a scrap of paper. Had George filed his suit before this decree was entered, this court opines that it would be governed by the answer of the Supreme Court of Florida in the case of Keener v. Keener, 11 So. 2d 180, wherein that court said —

"If on the other hand jurisdiction of the defendant [plaintiff here] was not acquired or the divorce is not effective as to both parties or is for other reasons invalid, then a complainant here would not be bound by it and would be in position to invoke the provisions of the statute in question to be relieved from it."

It is apparent, therefore, that George was in a good position to obtain a divorce on this ground when he could rely on the Mexican decree, then unattacked. We must, however, give the New York decree full faith and credit, and this decree in effect says that the Mexican decree never existed. Therefore, it is the opinion of this court that plaintiff must be denied his relief upon the ground asserted.

The parties have forgotten, however, that society is a party to this litigation. A child has been born, and unless some relief is given that child will carry an indelible burden the rest of its life.

By defendant's own admission she has been guilty of adultery with one Norton. When, in 1948 she lived with him as husband and wife in California for nine months, she placed herself in the position of an adulterous wife because she now says that she was the legal wife of George during that time and has a New York decree to prove it. This action on her part has never been condoned, according to the testimony in this record, anyway. Therefore, under rule 1.15 (b), Florida rules of civil procedure, this court, sua sponte, deems the plaintiff's complaint

to be amended to allege the ground of adultery. This ground has been proven by competent evidence and testimony.

It is, therefore ordered, adjudged and decreed —

That the equities are with the plaintiff and against the defendant, and he is entitled to a final decree of divorce.

That the parties hereto are hereby divorced, each from the other, a vinculo matrimonii.

That the defendant's counterclaim is hereby dismissed with prejudice.

That the plaintiff shall pay unto defendant's attorney of record the sum of $300, as and for attorney's fees, same to be paid within 15 days from this date.

That the plaintiff shall pay the costs of this suit.